IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| PENNY L. SPIVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:18-cv-427-SRW |
| | ) | |
| ENTERPRISE CITY BOARD OF EDUC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Penny L. Spivey brings this action against defendants[2] Enterprise City Board of Education, Daniel Whitaker, Robert Doerer, Bert Barr, Reid Clark, and Dorothy Richardson[3] (collectively, "ECS"), alleging eight counts of liability. In her first amended complaint, Doc. 20, plaintiff alleges, in counts I, II, III, and V, disability discrimination and retaliation pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"), as amended by the ADA Amendments Act (the "ADAAA"), and the

---

[1] The parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Docs. 17, 18 & 40.

[2] Pursuant to the plaintiff's notice of voluntary dismissal, the court dismissed defendant Gregory S. Faught from this cause without prejudice; Faught's motion to dismiss was thus denied as moot. *See* Doc. 56.

[3] Plaintiff has asserted claims against Whitaker, Doerer, Barr, Clark, and Richardson in both their individual and official capacities. Doc. 20 at 1. Because Enterprise City Board of Education is a named defendant in this action, the claims asserted against the individual board members in their official capacity are redundant and thus are due to be dismissed. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). The claims against the board members in their individual capacity remain.

1

Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (the "RA"). *See* Doc. 20.[4] In count IV, plaintiff alleges age discrimination pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. *See* Doc. 20. In count VI, plaintiff alleges a hostile and abusive work environment claim in violation of the ADA, the RA, and Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.* Finally, in counts VII and VIII, plaintiff alleges that defendant violated her due process and equal protection rights pursuant to 42 U.S.C. § 1983.[5]

This cause is presently before the court on defendant's motion to dismiss. *See* Doc. 33. Plaintiff filed a response in opposition to the motion, *see* Doc. 51, and ECS replied, *see* Doc. 53. Upon review of the motion and the record, the court concludes that defendant's motion to dismiss is due to be granted in part and denied in part.

## JURISDICTION AND VENUE

This court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331. ECS states, without further argument, that its motion to dismiss the amended complaint is "pursuant to Rule 12(b)(1) and 12(b)(6)." Doc. 34 at 2. Because all of the claims asserted in the amended complaint implicate federal law, the court's jurisdiction is proper. The parties do not assert that the court lacks personal jurisdiction over them, or that venue is improper.

---

[4] References herein to "Doc. __" are to the document numbers assigned to the pleadings, motions, and other materials, as reflected on the docket.

[5] Plaintiff has conceded that counts VII and VIII are due to be resolved in defendant's favor. *See* Doc. 51 at 14.

# MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550

U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (quotations and citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

## BACKGROUND AND RELEVANT FACTS[6]

At the time of filing the amended complaint, and at all times material to this action, Penny L. Spivey was disabled and over 40 years of age. When she was 10 years old, Spivey suffered a traumatic brain injury which required the surgical removal of a right temporal lobe hematoma and resulted in an ongoing disability. Spivey also suffers from another ongoing disability, Adult Attention Deficit Hyperactivity Disorder ("AADHD"). Spivey has received continuous medical treatment, monitoring, and medication for her AADHD. During the relevant time period, ECS knew of Spivey's brain injury and of her AADHD diagnosis.

---

[6] The facts contained herein are gleaned from the amended complaint. *See* Doc. 20 at 5–9. In considering a motion to dismiss, "all well-pleaded factual allegations in the complaint must be taken as true and the complaint must be construed in the light most favorable to the plaintiff." *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 523 (11th Cir. 2017).

Since 1999, Spivey had been employed as a teacher by the State of Alabama. Since 2002, Spivey had worked for ECS as a tenured special education teacher. Specifically, since 2014 and throughout the relevant time period, Spivey worked at Hillcrest Elementary School. Before her transfer to Hillcrest, Spivey had not been disciplined in any way. Upon her arrival at Hillcrest, Spivey felt that the special education students were not being given an appropriate education as required by law – specifically, they were not being educated in the least restrictive environment. This prompted Spivey to complain to Hillcrest's administration. After she voiced her concerns, Spivey was removed from her role as a special education teacher during the following school year in 2015-16. In 2016, Spivey's teaching responsibilities were removed altogether. Spivey contends that she was thus effectively demoted to a paraprofessional role and treated as a teacher's aide, while she was still technically employed as a tenured special education teacher.

Spivey alleges that, because of her attempt to protect the rights of Hillcrest's special education students, she became a victim of retaliation, a hostile work environment, and a retaliatory hostile work environment. Spivey was first disciplined by ECS after she complained about the treatment of the special education students, after she complained about the removal of her teaching responsibilities and demotion, and/or after she refused to seek medical treatment through the American Behavioral *Employee Assistance Program*. Spivey contends that ECS's requirement that she obtain psychological counseling is prohibited by the ADA.

On January 23, 2017, Dr. Teri Prim, Hillcrest's principal, and Melissa Layton, Hillcrest's assistant principal, issued a formal letter reprimanding Spivey for, among other

5

things, excessive absences and for refusing to participate in the behavioral assistance program. On February 17, 2017, Spivey was issued a formal letter recommending her suspension. On February 24, 2017, Spivey complained to Gregory S. Faught, ECS's superintendent, of harassment, hostile work environment, and retaliation; Faught later admitted to having received Spivey's letter and taking no action.

On February 28, 2017, at a meeting of the ECS Board of Education, Spivey was suspended without pay for three days. The ECS Board of Education notified Spivey of the suspension on March 1, 2017. On May 1, 2017, ECS issued a formal letter recommending that Spivey be fired. In support of its recommendation, ECS cited Spivey's refusal to participate in the American Behavioral *Employee Assistance Program* as well as her failure to appear at the February 28th board meeting. On May 9, 2017, pursuant to Alabama law, Spivey filed a notice of contest and request for hearing, which was acknowledged by ECS on May 15th. The termination hearing was held on June 27, 2017 and, on July 5th, ECS issued another letter which advised Spivey of her firing. Spivey filed an administrative appeal pursuant to Alabama law and, on September 6, 2017, the decision to terminate Spivey's employment was affirmed.

**DISCUSSION**

ECS contends that Spivey's complaint should be dismissed for two primary reasons: (1) Spivey has failed to exhaust her administrative remedies and her claims are now untimely, and (2) Spivey has failed to state a claim.[7] The court addresses these in turn.

---

[7] ECS argues that counts I and II should be dismissed because they adopt and re-allege the preceding count and thus do not satisfy the requirements of Rule 10(b). Doc. 34 at 2 n.2. The court

1. **The Exhaustion of Administrative Remedies Requirement**[8]

Pursuant to Title VII, the ADEA, and the ADA,[9] an employee alleging discrimination must exhaust his administrative remedies before bringing a civil complaint in federal court. 42 U.S.C. § 2000e-5(e)(1). A plaintiff must first file a charge with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the alleged improper employment action. *See* 42 U.S.C. § 2000e-(5)(e)(1). Upon his or her filing a charge, the EEOC investigates the employer's alleged discriminatory practice. 42 U.S.C. § 2000e-5(b).

A civil action can be brought only after the EEOC has notified the plaintiff of its decision to dismiss the charges. 42 U.S.C. § 2000e-5(e)(1). An employee must completely

---

does not reach this argument as its decision *infra* as to these claims is based on other grounds. ECS also argues that counts V and VI should be dismissed because Spivey does not assert each claim in separate counts, but has instead included multiple claims in one count. However, ECS has not cited to any case mandating dismissal under these circumstances. The court declines to dismiss counts V and VI on this basis because the "two counts are informative enough to permit [the] court to readily determine if they state a claim upon which relief can be granted." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1326 (11th Cir. 2015).

[8] ECS's argument that Spivey has failed to obtain a valid right to sue letter from the EEOC is moot. *See* Doc. 47.

[9] Spivey has asserted claims under the ADA and the RA. As a general proposition, the same legal standards govern both statutes, and decisional authority applying one or the other may be used interchangeably. *See Allmond v. Akal Sec., Inc.*, 558 F.3d 1312, 1316 n.3 (11th Cir. 2009) ("Because the same standards govern discrimination claims under the Rehabilitation Act and the ADA, we discuss those claims together and rely on cases construing those statutes interchangeably.").

exhaust the administrative remedies available from the EEOC before filing suit in federal court. *See Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 459 (5th Cir. 1970).[10]

As a general rule, a plaintiff cannot bring a lawsuit on a claim that was not included in his or her EEOC charge. *Zellars v. Liberty Nat. Life Ins. Co.*, 907 F. Supp. 355, 358 (M.D. Ala. 1995) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). The scope of an employment discrimination complaint is determined by the EEOC charge and investigation. *See Gregory v. Georgia Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004).

A plaintiff is barred from pursuing any claim in a federal court action that is not "like or related" to the claims asserted by the plaintiff in her EEOC charge, or that could not reasonably be expected to arise during the course of the EEOC investigation. *See Sanchez*, 431 F.2d at 466–67. Therefore, additional charges in a civil complaint, or in a second EEOC charge, which do not arise naturally and logically from the facts presented to the EEOC are not related to the original charge, and cannot be pursued in federal court.

### A. The EEOC Charge(s) and Timeliness

Spivey was terminated on July 5, 2017, but she did not file her amended EEOC charge until August 27, 2018.[11] Doc. 51 at 18. Although Spivey's original EEOC charge,

---

[10] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[11] The court may, in some circumstances, properly consider documents attached to an amended complaint without converting a motion to dismiss into a motion for summary judgement. *See McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x. 873, 875–76 (11th Cir. 2016). If the documents are central to the claims asserted in the complaint, and if the authenticity of the

8

which was filed on December 6, 2017, was within the 180-day requirement, her amended EEOC charge was not. *See* Doc 20-1 at 10. The question here is whether the new allegations made in Spivey's amended EEOC charge relate to those in the original one. If they do not, then the new claims are due to be dismissed for failure to exhaust administrative remedies.

Spivey's amended EEOC charge includes new claims that were not mentioned in the original submission.[12] The amended EEOC charge includes two additional claims: (1) an age discrimination claim under the ADEA, and (2) a new ADA disability discrimination claim. *See* Doc. 51 at 18–24. ECS contends, in its reply brief, that the two new claims are untimely and thus should be dismissed. *See* Doc. 53 at 4. Spivey's response, filed almost two months after the amended charge, is devoid of any substantive argument supporting the assertion that the amended EEOC charge relates back to the timely, original charge.

---

documents is not challenged, a court may consider them at the motion to dismiss stage. *Id.* If the plaintiff herself presented and relied on the documents, she cannot then "cry foul on appeal." *Id.*

[12] Spivey's original EEOC charge checked only the boxes for "retaliation," "disability," and "other." Doc. 20-1 at 10. In the space provided, Spivey then outlined her three claims: (1) "Retaliation and Creation of a Hostile Work Environment For Attempting To Protect The Rights of Special Needs Students," (2) "Retaliatory Discharge: I Complained in writing to the superintendent. At my termination hearing, he was asked, 'What did you do about that specific written complaint you received, if you remember?' He answered, 'I didn't do anything about it,'" and (3) "Violation of the ADA: An employer's requirement that an employee obtain psychological counseling constitutes a required medical examination which is prohibited by the Americans with Disabilities Act." Doc. 20-1 at 10. As to the second claim, Spivey said that "[s]he [had] complained of harassment, hostile work environment[,] and retaliation." Doc. 20-1 at 10. Spivey attached some pages with facts supporting those three claims.

However, the court will consider whether allegations first introduced in the amended EEOC charge can properly be included in this lawsuit.[13]

The EEOC's "relation-back" provision states that if an original EEOC charge is untimely amended "to cure technical defects or omissions," "to clarify and amplify allegations," or to allege "additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge," the amendment will "relate back" to the filing date of the original, timely EEOC charge. 29 C.F.R. § 1601.12(b).

When a plaintiff introduces new legal theories in an untimely EEOC charge, the amendments do not generally relate back to the original one. *See Mathis v. Leggett & Platt*, 263 F. App'x. 9, 12 (11th Cir. 2008) (holding that because plaintiff's age discrimination claim, disability discrimination claim, and Title VII race discrimination claim "only surfaced in an untimely EEOC charge and do not relate back," the district court was right to dismiss the claims). Other circuits have reached the same conclusion. *See Manning v. Chevron Chemical Co.,* 332 F.3d 874, 878 (5th Cir. 2003) ("Generally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination."); *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (holding that the plaintiff's untimely filed age discrimination and sexual harassment claims did not relate back to plaintiff's originally filed failure to promote on

---

[13] ECS also contends that the new allegations contained in the amended EEOC charge should be dismissed because the second EEOC charge did not include a verification. *See* Doc. 53 at 5. The court need not address this argument, as its decision is based on other grounds.

the basis of sex claim, in part, because the EEOC and the employer would not be able to properly investigate); *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 576 (7th Cir. 1998).

The two new claims implicated here allege (1) a different theory of recovery based on different facts not contained in the original EEOC charge (the new ADA claim), and (2) a claim under a different statutory scheme (the ADEA). And, although "a charging party's failure to attach the correct legal conclusion to the factual allegations contained in a charge of discrimination is a mere technical defect which may be amended," Spivey's original EEOC charge did not contain any facts that would support the new ADA claim contained in the amended charge and the amended complaint. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464 (5th Cir. 1970).

For all of these reasons, the court concludes that Spivey's new ADA claim related to her own purported disability, as well as her ADEA claim, do not relate back to her timely claims. Because Spivey did not originally reference age discrimination or disability discrimination involving her own disability, neither the EEOC or ECS had occasion to investigate. Therefore, because the ADEA claim and the new ADA claim related to her own purported disability were first included in the untimely amended EEOC charge, the court concludes that Spivey has not exhausted her administrative remedies as to these claims.

**B. The Scope of the Original EEOC Charge**

In order to determine whether a plaintiff may include a claim in a lawsuit, courts use, as a foundational starting point, the principle that "the crucial element of a charge of discrimination is the factual statement contained therein." *Sanchez*, 431 F.2d at 462.

Typically, courts permit claims to be included in a lawsuit only if the claims are merely new issues that otherwise relate to those found in an original EEOC charge. *See Increase Minority Participation By Affirmative Change Today v. Firestone*, 893 F.2d 1189, 1196 (11th Cir. 1990). Because the two claims included in the amended EEOC charge did not relate back to the ones in her original EEOC charge, Spivey did not exhaust her administrative remedies as to those claims.

Based on the same analysis discussed *supra* in section 1(A) of this opinion, Spivey's two new claims, first introduced in her amended complaint, Doc. 20, and in her amended EEOC charge, Doc. 51 at 18, are outside the scope of the claims raised in her timely EEOC charge. A plaintiff cannot introduce claims in a lawsuit if those claims do not have a factual basis in a timely filed EEOC charge. *See Green v. Elixir Industries, Inc.*, 152 F. App'x. 838, 841 (11th Cir. 2005) (holding that a hostile work environment claim was correctly excluded from a lawsuit by the district court because there were no facts in the timely EEOC charge that could support such a claim). Here, the original EEOC charge did not allude to an ADEA claim or an ADA claim based on Spivey's own purported disability, and also did not allege any facts that could reasonably support such claims.

For the reasons found *supra* in sections 1(A) and 1(B) of this opinion, Spivey's ADA claim related to her own alleged disability (counts I & II) and her ADEA claim (count IV) are due to be dismissed.

**2. Whether Spivey has Failed to State a Claim to Survive the Motion to Dismiss**

ECS's remaining arguments concern Spivey's alleged failure to state a claim to relief that is plausible on its face.[14] These claims will be analyzed in turn.

**A. Hostile Work Environment Under Title VII, the ADA, and the RA**

Count VI of Spivey's amended complaint alleges a hostile and abusive working environment in violation of Title VII, the ADA, and the RA. Doc. 20 at 24. Spivey also appears to make a retaliatory hostile work environment claim.[15] *See* Doc. 51 at 24–27.

In the Eleventh Circuit, to plead a hostile work environment claim, a plaintiff must allege "(1) that he belongs to a protected group, (2) that he was subjected to unwelcome harassment, (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin, (4) that the harassment was sufficiently severe or pervasive enough to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) that the employer is responsible for such conduct environment under a theory of either vicarious or direct liability." *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002).

---

[14] In her response, Spivey makes a brief reference to a claim for relief under a disparate treatment theory. Doc. 51 at 13. Spivey seems to support this theory by claiming that she was treated differently from other similarly situated employees with regard to absences. All of the facts that could conceivably support a claim under a disparate treatment theory are conclusory, and are cited in sections of the amended complaint that have already been voluntarily dismissed by Spivey, or in the amended EEOC charge. The court concludes that any purported claim for relief under a disparate treatment claim is due to be dismissed for failure to state a claim.

[15] Although the Eleventh Circuit has not yet adopted a cause of action for a retaliatory hostile work environment under the ADA, *Menzie v. Ann Taylor Retail, Inc.*, 549 F. App'x. 891, 896 n.9 (11th Cir. 2013), the Court has recognized a cause of action for a retaliatory hostile work environment under Title VII. *See Gowski v. Peake*, 682 F.3d 1299, 1311–12 (11th Cir. 2012). Given their virtually indistinguishable frameworks, this court will evaluate Spivey's claim under the jurisprudence of Title VII.

Here, Spivey alleges that she was subjected to harassment and retaliation by "being removed from supervisory responsibility as a teacher and [receiving] closer scrutiny than other employees," and she contends that the purported harassment was allowed to continue even after she filed a complaint with the superintendent. Doc. 20 at 27. The court concludes that Spivey's hostile work environment claim is not plausible on its face for at least two reasons.[16] First, Spivey does not allege facts that support the assertion that the purported harassment was due to her protected activity. Second, Spivey does not allege facts showing that the harassment she suffered was severe or pervasive enough to alter the terms of her employment. To evaluate whether alleged harassment is sufficiently severe to alter the terms of employment, courts look to a subjective and objective component. In applying the objective component, courts consider "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller*, 277 F.3d at 1276. The court finds that Spivey's factual allegations as to this claim do not meet the plausibility standard. Count VI is therefore due to be dismissed.

### B. Retaliation Under the ADA and the RA[17]

---

[16] Spivey also cites, generally, to an exhibit she attached to her amended complaint. *See* Doc. 20 at 26; *see also* Doc. 20-2. Because Spivey has not referenced the facts included in that exhibit in support of her claim, the court does not consider them in its analysis.

[17] The court cannot agree with ECS's argument that this claim is untimely. Doc. 53 at 10. Although it is unclear when some of the alleged retaliatory actions occurred, the court will not dismiss the claim on that basis alone. Spivey clearly refers to this claim in her original EEOC charge and, thus, she has timely exhausted her administrative remedies here.

In count V of the amended complaint, Spivey alleges that ECS retaliated against her for engaging in protected activities under the ADA and the RA. Two separate claims are contained in this count: (1) a retaliatory hostile work environment claim, and (2) a *prima facie* ADA retaliation claim. The court will address each claim in turn.

First, in order to prevail on a retaliatory hostile work environment claim, Spivey must show (1) that she engaged in a protected activity, (2) that after doing so, she was subjected to unwelcome harassment, (3) that the protected activity was a "but for" cause of the harassment, (4) that the harassment was sufficiently severe or pervasive to alter the terms of her employment, and (5) that the employer is responsible for the environment under either vicarious or direct liability. *See Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248–49 (11th Cir. 2014). Spivey alleges that sometime after she complained about the treatment of the special education students, she was removed from her special education teaching position. Spivey further alleges that she was subjected to harassment and that she complained of the harassment to the superintendent. Spivey asserts that as a result of her complaints, ECS employees directed "disciplinary warnings, such as counseling[,] threats of termination[,] [and] reprimands" at her. Doc. 20 at 24. Based on similar reasons outlined by the court in § 1(A), Spivey has not demonstrated that this claim is plausible. These facts do not tend to show that the protected activity was a "but for" cause of the alleged harassment, nor do they tend to show that it rose to a level severe or pervasive enough to alter the terms of her employment. For these reasons, ECS's motion to dismiss Spivey's retaliatory hostile work environment claim is due to be granted.

Second, Spivey also alleges that ECS retaliated against her for engaging in protected activities under the ADA and the RA. To establish a *prima facie* case of ADA retaliation, a plaintiff must demonstrate (1) that she engaged in a statutorily protected expression, (2) that she experienced an adverse employment action, and (3) that there was a causal link between the two. *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016). "There are two types of protected activity that can serve as the basis for a retaliation claim: (1) if an employee opposed any practice that is an unlawful employment practice (the 'opposition clause'), and (2) if an employee 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the 'participation clause')." *Lord v. City of Ozark*, No. 1:10cv451–WHA, 2010 WL 4780680, *5 (M.D. Ala. November 17, 2010) (citing 42 U.S.C. § 2000e–3(a)). Thus, to establish a retaliation claim, a plaintiff must allege facts that would fit into one of these two scenarios.

In order to evidence "a causal connection, the plaintiff must show that the decisionmaker was aware of his protected conduct, and that the protected activity and adverse action were not wholly unrelated." *Clemons v. Delta Air Lines Inc.*, 625 F. App'x 941, 945 (11th Cir. 2015); *see also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.").

While the facts cited by Spivey did not support her retaliatory hostile work environment claim, they are enough to suggest that her *prima facie* ADA retaliation claim is plausible on its face. Spivey alleges that she was removed from her position after she complained about the treatment of the special education students. Whether these facts are

16

sufficient to propel the claim to trial will be determined later, but the claim is, at least, plausible on its face. For these reasons, ECS's motion will be denied as to this claim.

### C. Requiring Medical Examinations Under the ADA

In count III of her amended complaint, Spivey alleges that ECS required that she submit to a medical examination in violation of the ADA. The ADA prohibits employers from requiring employees to submit to "a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). In order to succeed on this claim, a plaintiff does not need to establish a disability. *See Owusu–Ansah v. The Coca–Cola Company*, 715 F.3d 1306, 1310 (11th Cir.2013) (holding "that § 12112(d)(4)(A) protects employees who are not disabled.").

Spivey asserts that ECS acted in violation of the ADA because it required her to submit to a medical examination and fired her when she did not. In support of this allegation, Spivey provides only conclusory statements and cites to the termination letter which states that Spivey was "offered the opportunity to participate in the American Behavioral *Employee Assistance Program* at no cost to you in an effort to provide you with additional assistance in addressing problems affecting you work performance. [Spivey] declined the offer to participate in the *Employee Assistance Program*." Doc. 20-3 at 2. The Eleventh Circuit has held that there is a difference between requiring an employee to participate in a medical examination and merely offering it as a possible opportunity. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002). Spivey has not alleged

facts that tend to show that the *Employee Assistance Program* was, in fact, required. The court reads the cited letter to frame this program as a voluntary opportunity. Further, Spivey does not allege facts indicating that the program actually involved counseling, much less that it involved a medical examination. Because this claim lacks facial plausibility, count III will be dismissed.

## CONCLUSION AND ORDER

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant's motion to dismiss, *see* Doc. 33, is GRANTED in part, and DENIED in part.

    a. Count I is DISMISSED.

    b. Count II is DISMISSED.

    c. Count III is DISMISSED.

    d. Count IV is DISMISSED.

    e. Count V is DISMISSED as to the retaliatory hostile work environment claim.

    f. Count VI is DISMISSED.

    g. Count VII is DISMISSED.

    h. Count VIII is DISMISSED.

(2) The motion to dismiss is denied in all other respects. This matter will proceed on Count V, but only as to the *prima facie* ADA retaliation claim.

Done, on this the 29th day of January, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge