IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

PENNY L. SPIVEY,                    )
                                    )
            Plaintiff,              )
                                    )
v.                                  )          CASE NO. 1:18-cv-427-JTA
                                    )               (WO)
ENTERPRISE CITY BOARD               )
OF EDUCATION,                       )
                                    )
            Defendant.              )

## MEMORANDUM OPINION AND ORDER

Plaintiff Penny Spivey ("Spivey") filed this action against Defendant Enterprise City Board of Education ("the Board") after it terminated her employment as a special education teacher in the Enterprise City School District ("ECSD").

This matter is before the Court on the motion for summary judgment filed by the Board (Doc. No. 71), Spivey's response in opposition thereto (Doc. No. 76), and the Board's reply (Doc. No. 77). For the reasons set forth below, the Court finds that the motion for summary judgment (Doc. No. 71) is due to be GRANTED.

## I.      SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In reviewing a motion for summary judgment, a court must "view the evidence in the light most favorable to the non-moving party and resolve all reasonable doubts about the facts in favor of the non-movant." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 707 (11th Cir. 2019).

To survive summary judgment, a nonmovant must assert facts that make a sufficient showing on every essential element of her case on which she bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Factual assertions must cite to specific materials in the record, including affidavits, depositions, declarations, and interrogatory answers. Fed. R. Civ. P. 56(c). Unsupported conclusions and factual allegations are insufficient to create a genuine issue of material fact. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). Also insufficient are allegations based on speculation. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Finally, "the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson*, 477 U.S. 242, 247–248 (1986).

## II.    FACTUAL BACKGROUND[1] AND PROCEDURAL HISTORY

Spivey began her employment with ECSD as an instructor in the Alabama Occupation Diploma Program at Dauphin Junior High School in 2002 and transitioned to

---

[1] As it must when ruling on a motion for summary judgment, this Court views the evidence in the light most favorable to the nonmovant – here, Spivey – and draws all justifiable inferences in her favor. *Anderson*, 477 U.S. at 255.

a position as a special education teacher at Dauphin in 2008.  When that position was abolished in 2014, she accepted an offer to teach special education at Hillcrest Elementary, another ESCD school, for the 2014-15 school year.  (Doc. No. 20-4, Tr. at 222-23.)  In December 2014, Hillcrest Principal Teri Prim ("Prim") told Spivey that special education students would be removed from general education classrooms because her "teachers don't like this" and the special education students would "not going to be in those [general] rooms anymore."  (*Id*., Tr. at 215.)  Spivey told Prim that the removal was illegal because the special education students have a right to be in "those general ed classrooms per their IEP; that's their least restrictive environment."[2]  Prim repeated that the students would not return to the general education classrooms and Spivey reiterated that the removal plan was illegal.  (*Id*., Tr. at 215-16.)  Spivey sent an email reporting the illegal action to Joylee Cain ("J. Cain"), ECSD's Director of Special Education.  (*Id*., Tr. at 216.)  J. Cain took no action regarding the removal of the special education students.  (*Id*.)  Spivey reported her concern to the ECSD administrator in charge of student services but did not know the result of that action.  (*Id*., Tr. at 217.)

When Spivey returned to Hillcrest at the beginning of the 2015-16 school year, she was reassigned from her special education classroom to a makeshift office in a library

---

[2] Spivey explained during her termination hearing that federal law requires special education students be taught in the "least restrictive environment" pursuant to their Individual Education Plans ("IEP") devised by parents and teachers.  (Doc. No. 20-4, Tr. at 192-93, 213, 215-16.)  *See J.S., III, by & through J.S. Jr. v. Houston Cnty. Bd. of Educ*., 877 F.3d 979, 985-86 (11th Cir. 2017) (quoting the goal of the ADA goal set forth in *Fry v. Napoleon Cmty. Sch*., ---U.S.---, 137 S. Ct. 743, 756 (2017) as "enabling each covered person . . . to participate equally to all others in public facilities and federally funded programs"); *see also Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999) (explaining that "unjustified institutional isolation of persons with disabilities is a form of discrimination based on disability under Title II.").

closet with new assignments consistent with those of a teacher's aide.  (*Id*., Tr. at 194-95.)
Her rate of pay was unchanged during this time.  (Doc. No. 20-1 at 13, ¶ 4.)   Spivey felt
abused by other Hillcrest teachers who asked her to help make curtains for their classrooms
and decorate the school, and felt "humiliated as a teacher, with an administrative degree, a
master's in educational leadership, that had never had any kind of problems before."  (*Id*.,
Tr. at 199-200, 209.)  Spivey felt such hate and animosity on a daily basis from other
teachers "because of what [she] told [Prim] the first year" that she "stopped
[Superintendent Greg Faught[3]] in the hall last year" to try to tell him about "what's going
on" with her job.  Faught advised Spivey to "shoot him an e-mail and he would talk to [her]
then," but he never made an appointment to meet with her.  (*Id*., Tr. at 199-200.)
Representatives from the Alabama Education Association ("AEA") intervened on Spivey's
behalf and she was reassigned to a classroom as a special education teacher at the beginning
of the 2016-17 school year.  (*Id*., Tr. at 206-07, 233.)

Also, at the beginning of the 2016-17 school year, Patrick Cain ("P. Cain"),
Assistant Superintendent, former Director for Human Resources at ECSD, and husband of
J. Cain, visited all ECSD schools to review policies on absenteeism.  During these sessions
P. Cain made clear that coming to work was an essential requirement of employment at
ECSD.  (*Id*., Tr. at 86-87.)  In January of 2017, P. Cain was contacted by Prim to discuss
excessive absences by Spivey.  (*Id*., Tr. at 86.)  On January 31, 2017, Spivey received a

---

[3] Superintendent Greg Faught ("Faught") was named the acting superintendent of ECSD in
October 2016, interim superintendent in December 2016 and superintendent in April 2017.  (Doc.
No. 20-4, Tr. at 34-35.)

letter of reprimand dated January 23, 2017, and signed by Prim and Assistant Principal Mellissa Layton.  (Doc. No. 73-10 at 2-3.)  The letter cited several performance problems, such as Spivey's absences; failure to promptly report when she was absent so that appropriate substitutes for special education students could be secured; missing hall duty due to tardiness; failure to respond to calls, emails or texts from Prim and Layton; and late submissions of student assessments.  (*Id*.)  Prim said that Spivey's absences and late arrivals required her to arrange for other personnel to supervise students in the mornings between arrival and the start of the school day.  (Doc. No. 20-4, Tr. at 164-66.)  Spivey declined to provide her signature acknowledging receipt of the reprimand from Prim.  (Doc. No. 73-10 at 3.)

On or about January 31, 2017, Prim and P. Cain presented Spivey with a proposal for her to participate in the ECSD Employee Assistance Program ("EAP") by enrolling in confidential, cost-free counseling.  (Doc. No. 73-10 at 8; Doc. No. 20-4, Tr. at 92-93, 153.) Spivey declined to participate.  (Doc. No. 20-4, Tr. at 93, 133-34, 154.)  On February 17, 2017, Spivey did not meet with P. Cain and Prim as they requested.  (*Id*., Tr. at 37-38, 105; Doc. No. 73-10 at 8; Doc. No. 76-1 at 8.)  P. Cain did not say what the purpose of the meeting was, but Spivey testified that "[P. Cain] and [Prim] would continuously schedule impromptu meetings, one after another, for things I didn't even understand what I was being put in there for."  (Doc. No. 20-4, Tr. at 203.)  Spivey also stated that P. Cain and Prim lied when they said that she declined to meet with them.  (*Id*., Tr. at 211.)  When Faught learned from P. Cain that Spivey refused to meet with them, Faught met with her himself to determine why she would refuse to meet with her principal and human resources

director.  (*Id*., Tr. at 36-38.)  Faught could not recall Spivey's response but did recall that

he found it unacceptable.  (*Id*., Tr. at 38.)  He then had a letter prepared which informed

Spivey of his recommendation that she serve a three-day unpaid suspension.  (*Id*., Tr. at

38-39; Doc. No. 73-10 at 8; Doc. No. 76-1 at 8.)  The letter cited Spivey's tardiness and

absenteeism, inability to supervise assigned students due to tardiness and absenteeism, and

failure to complete assignments.  (Doc. No. 73-10 at 8; Doc. No. 76-1 at 8.)  The letter also

noted Spivey's declination of free counseling services and failure to meet with ECSD

administrative personnel on February 17, 2017.  (Doc. No. 73-10 at 8; Doc. No. 76-1 at 8.)

Faught closed the letter by informing Spivey that the ECSD Board would consider his

recommendation during its February 28, 2017 meeting and that she could request an

audience with the Board to contest the suspension by submitting a written request to his

office by February 23, 2017.  (Doc. No. 73-10 at 8; Doc. No. 76-1 at 8.)

Spivey did not reply by the February 23 deadline but asked Faught in a February

24, 2017 email to appear before the Board to contest his recommendation.   (Doc. No. 20-

2; Doc. No. 20-4; Tr. at 50-52, 74-75.)  Spivey apologized for the late submission but

explained that she thought the AEA was responsible for responding to his letter.  (Doc. No.

20-2 at 2.)  The email informed Faught that Spivey's tenure at Hillcrest had been difficult

due to harassment and retaliation, which in turn made her ill and caused her to miss work.

(*Id*.)  Spivey did not state the underlying cause for the harassment and retaliation but noted

that it had been an issue since she joined the Hillcrest staff.  (*Id*.)  She cited an instance

where Prim yelled at her because Spivey told P. Cain that she was not assigned a classroom

during the 2015-16 school year.  (*Id*. at 2-3.)  She closed the email by telling Faught that

she "tried to explain some of the things that have caused" the false accusations against her. (*Id*. at 3.)  Even though Faught scheduled Spivey to speak before the Board, she did not attend the Board's meeting of February 28, 2017. (Doc. No. 20-4, Tr. at 39, 67-68.)  In her absence, the Board voted to suspend Spivey as recommended by Faught. (Doc. No. 20-4, Tr. at 39.)

Faught did not make any inquiry into Spivey's written statements that she was a victim of harassment and retaliation.  (*Id*., Tr. at 51-53.)  He did not view the email "as a complaint" because

> [t]here was nothing to outline what had happened.  Who is to say that anything of a harassing nature took place or retaliation took place.  And, in fact, we had a conference set up, and – for Ms. Spivey.  And so it was my understanding that she was going to be there to state her case as to why she should not be suspended.  So, there was an opportunity for that to happen; and for whatever reason, not to blame anybody, but Ms. Spivey wasn't there.

 (*Id*., Tr. at 67-68.)  In addition, Faught only spoke to Prim regarding the yelling incident to which Spivey referred and Prim denied the incident occurred in that manner.  (Doc. No. 76-10 at 44-46.)

On May 1, 2017, Faught wrote Spivey to inform her of his recommendation to the Board that she be terminated at the end of the school year.  (Doc. No. 20-3.)  Faught's recommendation was based upon Prim's report that Spivey's attendance had not improved despite her reprimand and suspension.  (Doc. No. 20-4, Tr. at 173-74.)  Prim testified that Spivey never said that her excessive absences were attributable to mistreatment or discrimination, but the given reasons were illness or transportation problems.  (*Id*., Tr. at 160-61, 166-67.)  Spivey testified that she "tried to talk to [Faught] last year to complain.

[She] complained to Ms. Layton last year when [she] saw her in the hall.  [She has] complained to Dr. Prim numerous times. . . . There's nothing being done." (*Id*., Tr. at 235-36.)

Spivey was represented by counsel at her termination hearing before the Board on June 27, 2017.  Hearing testimony covered Spivey's tenure at Hillcrest and earlier employment at Dauphin Junior High.  (*Id*., Tr. at 190-91, 222-23.)  P. Cain and Spivey testified that there were no reprimands for her performance or absenteeism when she taught at Dauphin Junior High.  (*Id*., Tr. at 144, 190-91.)  However, a search of ECSD personnel records for the ten years preceding Spivey's termination showed total absences (while at Dauphin Junior High) of 40 days in 2006-07, 51 days in 2007-08, and 24 days in 2008-09.  (*Id*., Tr. at 227-29.)  P. Cain stated that Spivey's attendance during 2016-17 "was better this year than some of the other years."  (*Id*., Tr. at 117.)  Her total absences while at Hillcrest Elementary were 24 in 2014-15, 22 in 2015-16 and 43 in 2016-17.  (*Id*., Tr. at 229.)  P. Cain noted that there are roughly 20 working days in a month so more than 20 absences equate to missing "an entire month's worth of school."  (*Id*., Tr. at 229.)

P. Cain testified that Spivey's absences led to arrangements for a "permanent" substitute for her classroom.  (*Id*., Tr. at 100.)  If Spivey was present on a given day, Prim would reassign the substitute as needed.  (*Id*., Tr. at 100.)  There was no testimony regarding how often the substitute was assigned to a classroom other than Spivey's.  P. Cain also testified that he gathered data in preparation for Spivey's suspension hearing before the Board.  (*Id*., Tr. at 101-03.)  He created an exhibit which showed the leave taken by ECSD personnel from August 1, 2016 through February 27, 2017.  (*See* Exhibit 10,

Doc. 20-4 at 74.)  At the end of the year, P. Cain updated the exhibit and titled it "Statistical Breakdown of Absences by:  Leave Type, All HES Employees, Average Number of Absences of HES Employees, and Number of Days Taken by Ms. Spivey."  (*See id.*, Exhibit 10A.)

Spivey testified that her absences at Dauphin Junior High in 2007 were due to her divorce and medical problems she suffered that school year.  (*Id.*, Tr. at 228.)  Spivey did not contest her total absences at Hillcrest, but rather asserted that the absences were justified because she did not "see how anyone would come to school, how anyone could even perform after the things that ha[ve] been done here."  (*Id.*, Tr. at 229-30.)  She conceded that the tally of absences for 2016-17 was correct.  (*Id.*, Tr. at 230-33.)  Delisa Bowman, a payroll accountant with ECSD who handles leave and pay, testified that Spivey contacted her when a paycheck was significantly less than usual due to her unpaid leave status.  When Bowman explained the reason for the lesser amount, Spivey did not contest Bowman's calculations.  (*Id.*, Tr. at 76, 80-81.)

At the conclusion of the testimony and argument, the Board retired to consider Faught's recommendation to terminate Spivey.  (*Id.*, Tr. at 255.)  The Board Chair informed Spivey that a written decision would be issued following their decision.  (*Id.*)  The Board voted unanimously to accept Faught's formal recommendation for Spivey's termination (*Id.*, Tr. at 256-57) and issued a notice of termination to Spivey by letter dated July 5, 2017 (Doc. No. 20-1 at 7, ¶ 3).  Spivey requested and received a hearing on the Board's decision pursuant to the Alabama Students First Act, Ala. Code § 16-24C-1, *et seq.*, (1975).  The

hearing officer issued an order affirming Spivey's termination on September 6, 2017.

(Doc. No. 20 at ¶ 36.)

### A. Spivey's EEOC Claims

Spivey filed a Charge of Discrimination presenting three claims against ECSD to

the Equal Employment Opportunity Commission ("EEOC") on December 6, 2017.[4]  (Doc.

No. 20-1 at 10.)  The claims were as follows.

1) Retaliation and Creation of a Hostile Work Environment for Attempting to Protect the Rights of Special Needs Students;

2) Retaliatory Discharge – related to Faught's failure to respond to her email of February 24, 2017 wherein she told him that she was subjected to harassment and retaliation; and

3) Violation of the ADA – related to Spivey's refusal to participate in counseling through the Employee Assistance Program.

(*Id*.)  On September 17, 2018, the EEOC issued a Right to Sue letter upon the closure of

its investigation into Spivey's claims.  (Doc. No. 47 at 5.)

### B. Spivey's Claims

Spivey filed her initial complaint against the Board, its individual members in their

individual and official capacities, and Faught, in his individual capacity, on April 19, 2018.

(Doc. No. 1.)  On June 18, 2018, she filed her First Amended Complaint.  (Doc. No. 20.)

The Amended Complaint alleged in Counts I, II, III and V, disability discrimination and

---

[4] Spivey's charges were initially deemed untimely by the EEOC because they were not filed within 180 days of the Board's vote to terminate her employment.  (Doc. No. 20-1 at 9, EEOC Dismissal and Notice of Rights dated January 23, 2018.)  However, she successfully demonstrated that the relevant date for filing purposes was July 5, 2017, when the Board issued formal notice of termination.  (*Id*. at 7, ¶ 3.)  On April 19, 2018, the EEOC issued a Notice of Intent to Reconsider. (*Id*. at 4.)

retaliation pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), as amended by the ADA Amendments Act (the "ADAAA"), and the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. ("RA"). Count IV alleged age discrimination, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq*. ("ADEA"). Count VI alleged a hostile and abusive work environment claim in violation of the ADA, the RA, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. Counts VII and VIII alleged violations of Spivey's due process and equal protection rights pursuant to 42 U.S.C. § 1983. (Doc. No. 20.)

Spivey filed notice of her intent to voluntarily dismiss Faught as a defendant pursuant to Federal Rule of Civil Procedure 41. (Doc. No. 55.) The court applied Federal Rule of Civil Procedure 41(a)(1)(B) to order that Faught be dismissed without prejudice because Spivey's notice did not indicate whether the dismissal was with or without prejudice. (Doc. No. 56.) The claims against the board members in their official capacities were dismissed as redundant. (Doc. No. 57 at 1, n.3.)

The Board filed a motion to dismiss Spivey's Amended Complaint. (Doc. No. 33.) The court found that the only claim upon which Spivey could proceed was the ADA retaliation claim set forth in Count V.[5] (Doc. No. 57 at 16-17, 18.) This claim alleged that, as a result of Spivey's advocacy for Hillcrest's special education students to be instructed in the least restrictive educational environment, she was removed from her teaching position and assigned paraprofessional responsibilities. (Doc. No. 20 at ¶¶ 88, 91-92.)

---

[5] Count V also presented a claim for a retaliatory hostile work environment under the ADA and RA. The Court determined that this claim was due to be dismissed. (Doc. No. 57 at 15.)

Spivey alleges this reassignment prevented her from fully advancing the best interests of her students until her return to functioning as a special education teacher in 2016. (*Id*. at ¶ 93.) She also alleges that she was terminated in 2017 to prevent her continued advocacy on behalf of special education students. (Doc. No. 20 at ¶¶ 88-93.) The court found that the factual foundation for this claim – that Spivey "was removed from her position after she complained about the treatment of the special education students" – sufficiently presented a prima facie claim of ADA retaliation. (Doc. No. 57 at 16-17.)

C. <u>Motion for Summary Judgment</u>

The Board argues that summary judgment is appropriate because Spivey (1) has not shown that she suffered an adverse action prior to her termination (Doc. No. 72 at 13-16); (2) failed to meet the administrative prerequisites for her non-termination claims because she did not file an EEOC charge within 180 days of any alleged retaliation (*id*. at 17-19); (3) cannot establish a causal link between her protected activity and an adverse action (*id*. at 19-22); and (4) cannot show that its reasons for her termination were pretextual (*id*. at 22-26).

Spivey responds that her termination was a "serious and material change in the terms, conditions, or privileges of employment," and thus satisfies the Eleventh Circuit's test for demonstrating an adverse employment action. (Doc. No. 76 at 11-12.) She next cites this court's earlier finding that she timely exhausted her administrative remedies. (Doc. No. 76 at 12.) She completes her case for prevailing at the summary judgment stage by asserting that she can establish a causal link between her protected activity and adverse employment action, in addition to being able to demonstrate pretext in the Board's stated

reason for termination.  (Doc. No. 76 at 13-14; 15-18.)  Spivey concludes that her demonstration of pretext raises a genuine issue of material fact to be decided at trial.  (*Id*. at 18.)

In reply, the Board notes a key shift in Spivey's argument that her termination was the sole adverse employment action at issue and the only claim administratively exhausted. (Doc. No. 77 at 2-4.)  The Board accepts the concession that a single adverse action remains contested and reiterates its argument that Spivey cannot demonstrate that an activity protected under the ADA was the reason for her termination (*id*. at 4-8), or that its reasons for termination were pretextual (*id*. at 8-12).

The parties consented to final dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Docs. No. 17, 18, 40.)

### III.   JURISDICTION

This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331.   The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391.

### IV.   DISCUSSION

Spivey alleges the Board retaliated against her for engaging in protected activity under the Americans with Disabilities Act ("ADA").  "The ADA was enacted to provide a clear and comprehensive national mandate to end discrimination against individuals with disabilities and to bring persons with disabilities into the economic and social mainstream of American life."  *Harrison v. Benchmarks Elecs. Huntsville, Inc*., 593 F.3d 1206, 1212 (11th Cir. 2010) (citation and internal quotation omitted).  Under the ADA's anti-retaliation

statute, it is unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]."  42 U.S.C. § 12203(a).  *See Connelly v. Wellstar Health System, Inc.*, 758 F. App'x 825, 832 (11th Cir. 2019) ("To state a retaliation claim under the ADA, an employee must show that her employer discriminated against her for opposing an act or practice made illegal under the ADA."). "There are two types of protected activity that can serve as the basis for a retaliation claim: (1) if an employee opposed any practice that is an unlawful employment practice (the 'opposition clause'), and (2) if an employee 'made a  charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter' (the 'participation clause')."  *Lord v. City of Ozark*, No. 1:10cv451-WHA, 2010 WL 4780680, at *5 (M.D. Ala. Nov. 17, 2010) (citing 42 U.S.C. § 2000e-3(a)).

A.  Exhaustion of Administrative Remedies

The Board argues that any claims for alleged acts of retaliation before Spivey's July 2017 termination are untimely.  (Doc. No. 72 at 17-19.)  Before a plaintiff may pursue ADA claims in federal court, the plaintiff must present those claims to the EEOC so that the EEOC has the "first opportunity to investigate the alleged discriminatory practices [and] . . . perform its role in obtaining voluntary compliance and promoting conciliation efforts."  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004); *see also Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) ("It is settled law that, under the ADA, plaintiffs must comply with the same procedural requirements to

14

sue as exist under Title VII . . . ."); *Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th Cir. 2010) (citing 42 U.S.C. § 12117(a)) ("Before filing suit under . . . , the ADA . . . , a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC.").  A plaintiff must file an EEOC charge within 180 days of the alleged unlawful employment practice.  *See Anderson*, 379 F. App'x at 926.

Here, Spivey only complains of her termination as retaliation under the ADA.  (Doc. No. 76 at 12.)  Although Spivey initially complained of other actions during the 2015-2016 school year and her suspension in March 2017, she makes plain in her response to summary judgment that she is only challenging her termination.[6]  (*See* Doc. No. 76 at 11-13.)  The Board does not contest that Spivey timely filed an EEOC charge contesting her termination. (Doc. No. 72 at 19; Doc. No. 77 at 3.)  Hence, the only claim properly before the Court is Spivey's retaliatory discharge claim.  The Court now turns to address the merits of that claim.

### B.    Merits of Spivey's Claim

Allegations of retaliation under the ADA are assessed under the same analytical framework used for retaliation claims arising under Title VII.  *Stewart v. Happy Herman's Cheshire Bridge, Inc*., 117 F.3d 1278, 1287 (11th Cir. 1997); *Stewart v. Jones Util. and Contracting Co., Inc*., 806 F. App'x 738, 742 (11th Cir. 2020).  Like with disability

---

[6] Spivey filed her EEOC charge on December 6, 2017.  (Doc. No. 20-1 at 10.)  Counting back 180 days from that date, all of Spivey's non-termination claims for alleged acts of retaliation are untimely.  *See Shi v. Montgomery*, 679 F. App'x 828, 833 (11th Cir. 2017) (finding failure to administratively exhaust because plaintiff's 2012 EEOC charge was not filed within 180 days of adverse employment decisions made in 2007, 2010 and 2011).

discrimination claims, federal courts evaluate ADA retaliation claims based on circumstantial evidence[7] using the *McDonnell Douglas* burden-shifting framework. *Connelly*, 758 F. App'x at 832.  To establish a prima facie case of retaliation, a plaintiff must demonstrate that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).  "The failure to satisfy any of these elements is fatal to a complaint of retaliation."  *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004).

"Once a prima facie case is established, the burden then shifts to the defendant employer to come forward with legitimate non-discriminatory reasons for its actions that negate the inference of retaliation."  *Stewart*, 117 F.3d at 1287 (citation omitted).  "The plaintiff must then demonstrate that it will be able to establish at trial that the employer's proffered non-discriminatory reasons are a pretextual ruse designed to mask retaliation." *Id*.  Where a defendant has carried its burden of production, the plaintiff's demonstration of pretext must show that "but-for" the protected activity, the adverse action would not have occurred.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Mealing*

---

[7] An employee may demonstrate discrimination or retaliation by either direct or circumstantial evidence.  *Connelly,* 758 F. App'x at 828.   Direct evidence is "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'"  *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005). Hence, " 'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor' constitute direct evidence of discrimination."  *Id*. (citation omitted).  "If the alleged statement suggests, but does not prove, a discriminatory [or retaliatory] motive, then it is considered circumstantial evidence." *Id*.  *See Connelly*, 758 F. App'x at 828 ("Circumstantial evidence, by contrast, requires an inferential leap, suggesting—but not on its face proving—discriminatory intent.").  Here, Spivey does not point to direct evidence of retaliation.

*v. Ga. Dept. of Juvenile Justice*, 564 F. App'x 421, 427 (11th Cir. 2014) (applying the "but for" causation test.)

      1.   Spivey fails to establish a prima facie case.

The Court begins by addressing whether Spivey has established the first element of her prima facie case – whether she engaged in a statutorily protected expression.  Spivey claims she suffered retaliation because she opposed Prim's direction that special education students be removed from general education classrooms.  Specifically, Spivey advocated for special education students at Hillcrest to receive instruction in the "least restrictive environment" possible.  (Doc. No. 20 at ¶ 88; Doc. No. 76-3, 76-4, 76-5.)  That phrase, "least restrictive environment," is not found in the ADA, but is found in the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., which "ensures that children with disabilities receive needed special education services" and "offers federal funds to States in exchange for a commitment to furnish a 'free appropriate public education' – more concisely known as a FAPE – to all children with certain physical or intellectual disabilities."  *Fry v. Napoleon Cmty. Schools*, _ U.S. _, 137 S. Ct. 743, 748 (2017); *see also* 20 U.S.C. § 1412(a)(5)[8].  The guarantees of the IDEA are enforceable through Title II of the ADA (prohibiting any "public entity" from discriminating based on

---

[8] Under this subsection, titled "Least restrictive environment," the Secretary of Education conditions a state's receipt of IDEA funds upon certification to the Secretary that "[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  20 U.S.C. § 1412(a)(5).

disability) and § 504 of the Rehabilitation Act (prohibiting any federally funded "program or activity" from disability-based discrimination).   *See Fry*, 137 S. Ct. at 749-50. "Important as the IDEA is for children with disabilities, it is not the only federal statute protecting their interests."   *Id*. at 749.   Thus, Spivey's attempt to safeguard the rights of special education students to receive instruction in the least restrictive environment as required under the IDEA was an action protected by the ADA.   Consequently, Spivey has established the first element of a prima facie case.

The Court proceeds to the second element of Spivey's prima facie case—whether she suffered an adverse employment action.

> The ADA prohibits a wide variety of adverse employment actions when the employer takes those actions for a prohibited reason.   An employment action is considered adverse only if it results in some tangible, negative effect on the plaintiff's employment.   A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

*Martin v. Eli Lilly & Co*., 702 F. App'x 952, 956 (11th Cir. 2017) (internal citations and quotations omitted).   Spivey has clearly satisfied the requirement of showing an adverse employment action as both parties acknowledge that her termination is the sole adverse action before the court for summary judgment.   (Doc. No. 72 at 19; Doc. No. 76 at 11-12; Doc. No. 77 at 3-4.)   So, Spivey has established the second element of a prima facie case.

Spivey's final prima facie hurdle is establishing a causal link between her protected expression and her termination.   In this Circuit, a causal connection between the protected conduct and the retaliatory action "has traditionally required a showing 'that the protected activity and the adverse action were not wholly unrelated.' "   *Gogel v. Kia Motors Mfg. of*

*Ga., Inc.,* 967 F.3d 1121, 1135 (11th Cir. 2020). In this case, it is undisputed that Spivey spoke against Prim's removal of special education students from general education classrooms in December 2015 and was terminated in July 2017. This eighteen-month period between protected activity and adverse employment action works against Spivey because it far exceeds other periods the Eleventh Circuit has found too remote to establish a causal link. *See Jones v. Dept. of Corr.*, 792 F. App'x 694, 697 (11th Cir. 2019) (finding three-month period between complaint and termination too short to establish a prima facie case of retaliation); *Watkins v. Huntsville, Ala.*, 176 F. App'x 955, 956-57 (11th Cir. 2006) (eight-month lapse between a plaintiff's EEOC charge and termination did not raise an inference of a causal link); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (three and one-half months temporal proximity, without more, is insufficient to create jury issue). In light of the aforementioned precedent, the Court finds that the eighteen-month lapse between Spivey's protected activity[9] and her termination fails to raise an inference of a causal link and thus prevents her from establishing a prima facie case of retaliation.[10]

---

[9] To the extent Spivey argues that her July 2017 termination is causally linked to her February 2017 letter, the argument misses the mark. Spivey's February 2017 letter details the alleged stress and harassment she suffered at the school but does not describe any statutorily protected activity. (Doc. No. 73-2 at 38-39.) Spivey does not state any complaints regarding the treatment of special education students or the special education program or anything related to the disability of students in this letter, thus the letter does not constitute protected activity under the ADA and cannot provide the causal link that is required.

[10] *Gogel* notes that Circuit courts have been inconsistent as to whether a plaintiff need show that "but-for the protected conduct, the defendant would not have taken the particular adverse action" at the prima facie stage of the summary judgment analysis or whether it is at the pretext stage of the analysis when the plaintiff must satisfy this standard." *Gogel*, 967 F.3d at 1135 n.13 (applying

2.      Spivey fails to establish pretext.

Even assuming Spivey could establish a prima facie case of retaliation under the ADA, she does not survive summary judgment.  The Board asserts Spivey was terminated for excessive, unauthorized absenteeism.  (Doc. No. 72 at 22.)  This is a legitimate, nondiscriminatory reason for the Board's action.  *See Duckworth v. Pilgrim's Pride Corp.*, 764 F. App'x 850, 854 (11th Cir. 2019) (finding that excessive, unexcused absenteeism is a legitimate, nondiscriminatory reason to terminate an employee).

Because the Board has offered a legitimate, nondiscriminatory reason for its action, to survive summary judgment Spivey must "present sufficient evidence to create a genuine issue of material fact about the veracity of [the Board's] proffered non-discriminatory reason." *Duckworth*, 764 F. App'x at 854 (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1269 (11th Cir. 1999)).  To establish the necessary causation, Spivey must demonstrate that "her protected activity was a but-for cause of the alleged adverse action by the [Board]." *Gogel*, 967 F.3d at 1135 (alteration in original) (quoting *Nassar*, 570 U.S. at 362).  In other words, Spivey must prove that, had she not engaged in the protected conduct, the Board would not have terminated her.  *Id.*  Spivey may make this showing by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Board's proffered reasons for its actions that "a reasonable factfinder could find them unworthy of credence." *Gogel*, 967 F.3d at 1136.  A reason is not pretext for retaliation "unless it is shown *both* that [the Board's] reason was false, *and* that

---

the but-for test applies at the pretext stage.)  Therefore, in accordance with this recent en banc precedent from the Eleventh Circuit, the Court's analysis continues.

[retaliation] was the real reason" the Board acted. *Springer*, 509 F.3d at 1349 (emphasis in original). As aforementioned, it is Spivey's "burden to provide evidence from which one could reasonably conclude that[,] but for her alleged protected act(s)," the Board would not have acted adversely towards her. *See Gogel*, 967 F.3d at 1136.

Spivey argues that the statistical breakdown exhibit[11] of her absences establish pretext because it was created by P. Cain for her termination hearing to demonstrate her excessive absences and that he was biased against her due to her prior conflict with his wife, J. Cain. (Doc. No. 76 at 16.) Spivey's speculation as to bias and discriminatory intent on the part of Cain is unpersuasive. Even if P. Cain were biased against Spivey, such bias does not create a genuine issue of material fact as to whether the Board genuinely believed that Spivey had excessive absences and terminated her because of those absences. *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1310-11 (11th Cir. 2012) (holding that, where a plaintiff chooses to attack the veracity of the employer's proffered reason, the

---

[11] Spivey also attempts to use the statistical breakdown exhibit to attack the credibility of Faught's testimony from his August 2019 deposition. Faught's deposition testimony was that he did not recall the exhibit and did not know who produced it. (Doc. No. 73-1 at 2, 6.) Spivey asks the court to find that because Faught testified at her termination hearing he would have seen the exhibit at that time. (Doc. No. 76 at 16-17.) Further, Spivey argues that Faught's lack of familiarity with the exhibit could not be genuine because "[i]t should be plain to any reasonable observer to infer that Faught delegated the task of creating the Statistical Breakdown of Absences to P. Cain for the unlawful purpose of facilitating the termination of Plaintiff Spivey." (*Id.* at 17.) The termination hearing transcript shows that the exhibit was introduced through P. Cain's testimony, as he was the person in charge of ECSD human resources and was the appropriate witness to discuss such information. (Doc. No. 20-4, Tr. at 101-02.) In fact, P. Cain discussed the preparation of the exhibit for the Board hearing set for February 28, 2017, and stated that the analysis was extended through the end of the school year to create the exhibit. (*Id.*, Tr. at 101-02.) The Court cannot assume that Faught specifically directed Cain to prepare it or that Faught ever saw the document prior to his deposition. The record shows that Faught was certainly aware of Spivey's absenteeism, but it cannot be said that he developed a plan to terminate her based on improper motive.

inquiry into pretext is limited to deciding "whether the employer gave an honest explanation of its behavior") (quotation marks omitted).

Next, Spivey asserts that the Board's reason of excessive absenteeism is pretext because she had more absences prior to the 2016-17 school year. (Doc. No. 76 at 16.) She cites P. Cain's acknowledgment during her termination hearing that she had more absences in previous years while at ECSD to infer that the Board's failure to penalize her in past years indicates improper motive for her termination in 2017. (*Id*.) However, an employer's leniency toward absenteeism in the past does not establish pretext. *See Cunningham v. Nature's Earth Pellets, L.L.C.*, 433 F. App'x 751, 752–53 (11th Cir. 2011) ("Cunningham argues that Nature's Earth Pellets had not considered terminating her for past infractions of its leave policy, but that argument does not establish that the decision to fire Cunningham lacked credence."). Based on Spivey's history of absenteeism, the Board could legitimately terminate her employment.[12]

Finally, Spivey submits her own deposition testimony to suggest that the Board improperly interpreted her payroll records, counted her absent when she was in fact participating in professional development activities, and wrongly used those authorized absences to support her termination. (Doc. No. 76 at 17-18, Doc. No. 76-6 at 1-3.) This argument is unavailing. Notably, Spivey did not challenge the Board's record of her absences at her termination hearing. (Doc. No. 20-4, Tr. at 230-33.) Nor did Spivey

---

[12] It is undisputed that ECSD had an employee leave policy which states that "regular attendance is an essential job function of every job and position" and directs that "an employee who is absent from work without approved leave will be considered in violation of Board policy and subject to appropriate disciplinary measures which may include termination." (Doc. No. 73-8 at 29.)

present documentation to the Court which supports her assertion.  (Doc. No. 76 at 17-18 (citing only Spivey's deposition testimony).)  "While the Court must accept a plaintiff's evidence at the summary judgment stage, it is not required to take a plaintiff's unsubstantiated word regarding the defendant's alleged unlawful behavior." *Cyprian v. Auburn Univ. Montgomery*, 799 F. Supp. 2d 1262, 1286 (M.D. Ala. 2011).  The Court finds no basis for pretext in this argument crafted from Spivey's own self-serving deposition testimony and nothing in the record indicates otherwise.  Even if the Board's record of Spivey's absences were incorrect, the Board could have believed the record to be accurate because Spivey did not contest the record at her termination hearing and the Board could have legitimately terminated her.  *Smith v. PAPP Clinic, P.A.*, 808 F.2d 1449 (11th Cir. 1987) (holding that an employer's honest belief that an employee violated its policies can constitute a legitimate reason for termination even if the employer's belief may have been mistaken or wrong).

Viewing all facts and reasonable inferences in the light most favorable to Spivey, the Court concludes that she has failed to create a genuine issue of fact as to whether the Board's decision to terminate her was discriminatory.  The Circuit has "repeatedly and emphatically held" that employers may fire an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Flowers v. Troup Cnty., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015).  Spivey has presented no evidence showing that the Board did not honestly believe she was violating the attendance policy or that this reason was just a cover-up for her termination.  Moreover, Spivey has presented no evidence that her termination would not

have occurred but-for her complaint regarding the special needs students in 2015.  In short, the Board is entitled to summary judgment.

## V.    CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendants' Motion for Summary Judgment (Doc. No. 71) is GRANTED.

A separate judgment will be entered.

DONE this 21st day of September, 2021.

_Jerusha T. Adams_

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE